ORDERED PUBLISHED

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   CC-14-1362-TaDPa |
| YURI PLYAM and NATALIA PLYAM, ) | Bk. No.   2:13-bk-15020-BB |
| Debtors. ) | Adv. No.   2:13-ap-01558-BB |
| _____ ) | |
| YURI PLYAM; NATALIA PLYAM, ) | |
| Appellants, ) | |
| v. ) | **O P I N I O N** |
| PRECISION DEVELOPMENT, LLC, ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on January 22, 2015
at Pasadena, California

Filed - May 5, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Sheri Bluebond, Chief Bankruptcy Judge, Presiding

Appearances:    Dennis P. Riley of Mesisca Riley & Kreitenberg, LLP argued for appellants Yuri Plyam and Natalia Plyam; Leo Daniel Plotkin of Levy, Small & Lallas argued for appellee Precision Development, LLC.

Before:   TAYLOR, DUNN, and PAPPAS, Bankruptcy Judges.

TAYLOR, Bankruptcy Judge:

Debtors Yuri Plyam and Natalia Plyam appeal from the bankruptcy court's summary judgment excepting a state court judgment from discharge pursuant to § 523(a)(4)[1] and (a)(6), as to Yuri,[2] and pursuant to § 523(a)(6), as to Natalia.

The bankruptcy court granted summary judgment based on issue preclusion and the state court judgment's award of actual and punitive damages for breach of fiduciary duty. We determine that the bankruptcy court erred as the state court judgment did not include a finding equivalent to willfulness as required for § 523(a)(6) nondischargeability, notwithstanding its award of punitive damages under California Civil Code § 3294. The state court judgment also failed to establish the existence of an express or technical trust as required for § 523(a)(4) nondischargeability.

As a result, we VACATE the judgment and REMAND to the bankruptcy court for further proceedings consistent with this opinion.

**BACKGROUND**

In 2005, Yuri formed Precision Development, LLC, a Nevada limited liability company ("Precision"), for the purpose of developing residential real property in Southern California. Initially, he was its sole member and manager.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] We refer to the parties hereafter by their first names for sake of clarity; we intend no disrespect.

2

Precision obtained significant investment capital from Clare Bronfman and Sara Bronfman (jointly, the "Bronfmans"). According to the Bronfmans, they eventually invested approximately $26.3 million.

Between 2005 and 2007, Precision acquired numerous parcels of real property. Yuri's separate business entity oversaw their development; it did not go well. Precision's funds ran out in 2007 before it successfully completed development of or sold any of the properties.

Precision's operating agreement provided that it would hold title to all real property acquired with Precision funds. The Debtors, however, caused Precision to deed them three parcels of real property (the "Transferred Properties"). And once they acquired title, the Debtors alleged ownership of the Transferred Properties in loan documents and used the Transferred Properties as collateral for construction loans. The Debtors later also transferred a fourth property from Yuri's business entity to Precision and then from Precision to their family trust.

Eventually, the Bronfmans discovered Precision's dire state; few of its developments were close to completion. Indeed, some remained vacant land. The only projects with significant development were the Transferred Properties. And, the Debtors lost even the Transferred Properties to foreclosure by their construction lender.

The Bronfmans attempted to remedy the situation. They subsequently obtained control of Precision and caused it to sue the Debtors in California state court. The complaint alleged that the Debtors misused Precision funds and diverted its

3

assets.

Following an 18-day trial, a jury entered a special verdict finding that "Yuri Plyam or Natasha [sic] Plyam" breached their fiduciary duties to Precision and that "Yuri or Natasha [sic] Plyam" acted with malice, oppression, or fraud. The jury awarded $10,100,000 in general damages and $200,000 in punitive damages (the "State Court Judgment"). The Debtors appealed to the California court of appeal, which affirmed the State Court Judgment. See Precision Dev., LLC v. Plyam, 2013 WL 5801759 (Cal. Ct. App. Oct. 29, 2013). The State Court Judgment is now final.

The Debtors responded with a chapter 7 bankruptcy, and Precision then commenced an adversary proceeding seeking to except the State Court Judgment from discharge pursuant to § 523(a)(4) (for fraud or defalcation) and (a)(6).[3] It subsequently moved for summary judgment or, in the alternative, partial summary judgment. It based its motion solely on the State Court Judgment's alleged issue preclusive effect.

The Debtors opposed. They defended against the § 523(a)(4) claim by arguing that Natalia never owed a fiduciary duty to Precision and that Yuri was not a fiduciary during the time of the alleged acts of defalcation. On the § 523(a)(6) claim, they

---

[3] In the adversary complaint, Precision also sought nondischargeability under § 523(a)(2)(A). As relevant to this appeal, it obtained summary judgment only as to the § 523(a)(4) and (a)(6) claims. The bankruptcy court dismissed with prejudice the § 523(a)(2)(A) claim against both of the Debtors, the § 523(a)(4) claim for defalcation against Natalia, and the § 523(a)(4) claim for embezzlement and/or larceny against both of the Debtors. No appeal was taken from those decisions.

4

generally contested the sufficiency of evidence and argued, in particular, that triable issues of fact existed as to the justification or excuse for their actions in relation to the Transferred Properties and the later transfer of the fourth property to their family trust. The Debtors also argued that the State Court Judgment's punitive damages award did not satisfy the elements for § 523(a)(6) nondischargeability.

Following arguments at the hearing, the bankruptcy court relied on issue preclusion and granted summary judgment in part and denied it in part. It determined that Natalia did not owe a fiduciary duty; thus, it granted summary judgment against her only under § 523(a)(6). As to Yuri, it granted summary judgment on both the § 523(a)(4) and (a)(6) claims.

The bankruptcy court subsequently entered a judgment excepting the State Court Judgment, in the total amount of $10,497,843.24, from discharge. The Debtors timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court err in granting summary judgment to Precision by giving issue preclusive effect to the State Court Judgment as to the § 523(a)(4) and (a)(6) nondischargeability claims?

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's decisions to grant summary judgment and to except a debt from discharge under

5

§ 523(a)(4) and (a)(6). See Boyajian v. New Falls Corp. (In re Boyajian), 564 F.3d 1088, 1090 (9th Cir. 2009); Black v. Bonnie Springs Family Ltd. P'ship (In re Black), 487 B.R. 202, 210 (9th Cir. BAP 2013); see also Carrillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002) (nondischargeability presents mixed issues of law and fact and is reviewed de novo).

We also review de novo the bankruptcy court's determination that issue preclusion was available. In re Black, 487 B.R. at 210. If issue preclusion was available, we then review the bankruptcy court's application of issue preclusion for an abuse of discretion. Id. A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

**DISCUSSION**

Summary judgment is appropriate where the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (applicable in adversary proceedings under Rule 7056). The bankruptcy court must view the evidence in the light most favorable to the non-moving party when determining whether genuine disputes of material fact exist and whether the movant is entitled to judgment as a matter of law. See Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir.

6

2014). And, it must draw all justifiable inferences in favor of the non-moving party. See id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

A bankruptcy court may rely on the issue preclusive effect of an existing state court judgment as the basis for granting summary judgment. See Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 831-32 (9th Cir. BAP 2006). In so doing, the bankruptcy court must apply the forum state's law of issue preclusion. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001); see also 28 U.S.C. § 1738 (federal courts must give "full faith and credit" to state court judgments). Thus, we apply California preclusion law.

In California, application of issue preclusion requires that: (1) the issue sought to be precluded from relitigation is identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding. Lucido v. Super. Ct., 51 Cal. 3d 335, 341 (1990). California further places an additional limitation on issue preclusion: courts may give preclusive effect to a judgment "only if application of preclusion furthers the public policies underlying the doctrine." In re Harmon, 250 F.3d at 1245 (citing Lucido, 51 Cal. 3d at 342-43); see also In re Khaligh, 338 B.R. at 824–25.

The party asserting preclusion bears the burden of

7

establishing the threshold requirements. In re Harmon, 250 F.3d at 1245. This means providing "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995), aff'd, 100 F.3d 110 (9th Cir. 1996). Ultimately, "[a]ny reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the [issue preclusive] effect." Id.

The Debtors do not challenge the bankruptcy court's determination that the State Court Judgment is final and against the Debtors. Consequently, we do not review this determination on appeal.

**A. The bankruptcy court erred in granting summary judgment to Precision on its § 523(a)(6) claim based on the issue preclusive effect of the State Court Judgment.**

**1. Exceptional circumstances justify our review of the propriety of issue preclusion as to both Yuri and Natalia.**

Yuri and Natalia filed a joint opening brief on appeal that requests de novo review of the availability of issue preclusion in connection with the § 523(a)(6) judgment, but named only Natalia when discussing this portion of the summary judgment. Precision, thus, argues that Yuri did not specifically challenge the § 523(a)(6) judgment against him and that he cannot obtain relief from that portion of the summary judgment on appeal. We acknowledge that a technical waiver exists. Nonetheless, based on the circumstances of this case and the nature of our ultimate conclusion, we determine that exceptional circumstances exist,

8

and we exercise our discretion and extend review as to Yuri as well. See Mano-Y&M, Ltd. v. Field (In re Mortg. Store, Inc.), 773 F.3d 990, 998 (9th Cir. 2014) (appellate court may exercise discretion to consider waived issues based on exceptional circumstances).

Here, the Debtors share an attorney and filed a joint appellate brief, which squarely challenges the bankruptcy court's § 523(a)(6) determination. Our de novo review and resulting conclusion is based on a strictly legal point. While the Debtors do not argue this point directly as to Yuri in their opening brief, they do argue in their discussion of § 523(a)(4) that the State Court Judgment did not necessarily decide that Yuri acted with gross recklessness, a less culpable state of mind than that required for § 523(a)(6) willfulness. We, thus, determine that vacating the judgment solely as to Natalia would be manifestly unjust.

Section 523(a)(6) excepts from discharge debts arising from a debtor's "willful and malicious" injury to another person or to the property of another. Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008). The "willful" and "malicious" requirements are conjunctive and subject to separate analysis.[4] Id.; In re Su, 290 F.3d at 1146-47.

---

[4] A "malicious" injury requires: "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1209 (9th Cir. 2001). The Debtors do not challenge the bankruptcy court's application of issue preclusion as to § 523(a)(6) maliciousness. As a result, that issue is deemed waived. See Padgett v. Wright, 587 F.3d 983, 985 n.2 (9th Cir. 2009).

9

**2. The State Court Judgment did not satisfy the element of willful injury as required for § 523(a)(6) nondischargeability.**

Under § 523(a)(6), the willful injury requirement speaks to the state of mind necessary for nondischargeability. An exacting requirement, it is satisfied when a debtor harbors "either a subjective intent to harm, or a subjective belief that harm is substantially certain." In re Su, 290 F.3d at 1144; see also In re Jercich, 238 F.3d at 1208. The injury must be deliberate or intentional, "not merely a deliberate or intentional **act** that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) (emphasis in original). Thus, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Id. at 64.

The terms "willful" and "malicious," first appearing in the Bankruptcy Act of 1898,[5] seemingly derive in some measure from the common law concepts of malice in fact and malice in law, respectively.

California, for example, defines malice in law as an "intent to do a wrongful act, established either by proof or presumption of law . . . from the intentional doing of the act without justification or excuse or mitigating circumstances." In re V.V., 51 Cal. 4th 1020, 1028 (2011) (citing Davis v. Hearst, 160 Cal. 143 (1911); Cal. Penal Code §§ 7(4), 450(e); 1 Witkin & Epstein, Cal. Criminal Law § 11) (internal quotation marks omitted); see also Tinker v. Colwell, 193 U.S. 473, 485-86

---

[5] 30 Stat. 544, ch. II § 17(2) (1898) (repealed 1978).

10

(1904) ("Malice, in common acceptation, means ill will against a person, **but in its legal sense it means a wrongful act, done intentionally, without just cause or excuse**." (emphasis added) (quoting <u>Bromage v. Prosser</u>, 4 Barn. & Cress. 247, 107 Eng. Rep. 1051 (K.B. 1825) (internal quotation marks omitted)), <u>superseded by statute</u>, Pub. L. No. 95-598, 92 Stat. 2549 (1978); <u>Maynard v. Fireman's Fund Ins. Co.</u>, 34 Cal. 48, 53 (1867) (same). Thus, malice in law squares cleanly with § 523(a)(6) maliciousness.

In contrast, malice in fact is defined as "a **state of mind** arising from hatred or ill-will, evidencing a willingness to vex, annoy, or **injure another person**." <u>Davis v. Hearst</u>, 160 Cal. at 160 (emphasis added); <u>In re V.V.</u>, 51 Cal. 4th at 1028 ("Malice in fact — defined as 'a wish to vex, annoy, or injure' . . . — consists of actual ill will or **intent to injure**.") (emphasis added).

This background, highlights two points critical to any § 523(a)(6) willfulness determination. First, by holding that the requisite state of mind was an actual intent to injure (or substantial certainty regarding injury), the Supreme Court in <u>Geiger</u> effectively adopted a narrow construction and the most blameworthy state of mind included within the common understanding of malice in fact. As relevant here, under California law, the general definition of malice in fact encompasses less reprehensible states of mind.

Second, as the Supreme Court clarified in <u>Geiger</u>, recklessly inflicted injuries do not satisfy the § 523(a)(6) willfulness requirement. <u>See</u> 523 U.S. at 61-62. This necessarily includes all degrees of reckless conduct, whether

11

arising from recklessness simple, heightened, or gross; conduct that is reckless merely requires an intent to act, rather than an intent to cause injury as required under Geiger. See H.R. Rep. 95-595, at 365 (1977) ("'Willful' means deliberate or intentional. To the extent that Tinker v. Colwell, 193 U.S. 473 [1904], held that a looser standard is intended, and to the extent that other cases have relied on Tinker to apply a **'reckless disregard' standard, they are overruled.**") (emphasis added); Restatement (Second) of Torts § 500 cmt. f (1965). But see Bullock v. BankChampaign, N.A., 133 S. Ct. 1754, 1757 (2013) (holding that, for the purposes of § 523(a)(4), the state of mind for "defalcation" includes gross recklessness).

Here, the State Court Judgment provided two possible bases for the application of issue preclusion: the findings in the punitive damages award and the determination of breach of fiduciary duty under state law. Neither basis supported an application of issue preclusion on the issue of § 523(a)(6) willfulness.

### 3. The punitive damages award was an insufficient basis for issue preclusion.[6]

The jury's punitive damages award against both of the Debtors was based on a disjunctive finding of malice, oppression, or fraud. The "malice, oppression or fraud" finding

---

[6] The Debtors make much of the fact that the jury finding was made in the alternative; that is, Yuri or Natalia. But, as the bankruptcy court noted, the punitive damages award was entered against both of the Debtors, which necessarily required a finding of malice, oppression, or fraud against each individual.

12

arises from California Civil Code § 3294 ("CC § 3294"), which provides for the recovery of punitive damages in non-contract breach civil cases. Each finding supplies an independent basis for a punitive damages award under CC § 3294. See Coll. Hosp. Inc. v. Super. Ct., 8 Cal. 4th 704, 721 (1994).

Civil Code § 3294 provides statutory definitions of these terms.[7] "Malice" is defined as either: (1) conduct that the defendant intends to cause injury to the plaintiff ("Intentional Malice"); or (2) despicable conduct carried on by the defendant with a willful and conscious disregard of the rights or safety of others ("Despicable Malice"). Cal. Civ. Code § 3294(c)(1).[8] "Oppression" means "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Id. § 3294(c)(2). And, "fraud" refers to "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Id. § 3294(c)(3).

---

[7] Although enacted in 1872, CC § 3294 remained largely unaltered until amendment in 1980. Civil Code § 3294 was previously amended in 1901 (deemed unconstitutional and void in Lewis v. Dunne, 134 Cal. 291 (1901)) and 1905.
Prior to 1980, although the statute required a finding of malice, oppression, or fraud to recover punitive damages, it did not expressly define those categories. The 1980 amendment added the statutory definitions.

[8] In 1987, the California legislature amended CC § 3294 and added the "despicable" adjective to the type of conduct necessary for Despicable Malice and oppression. It also qualified Despicable Malice with the requirement that a defendant willfully and consciously disregard the rights or safety of another.

13

Only Intentional Malice, see Brandstetter v. Derebery (In re Derebery), 324 B.R. 349, 356 (Bankr. C.D. Cal. 2005), and fraud expressly require an intent to cause injury.  As a result, only those findings satisfy the § 523(a)(6) willfulness requirement for the purposes of issue preclusion.  Conversely, Despicable Malice and oppression, which arise from acts in conscious disregard of another's rights or safety, fail to satisfy the requisite state of mind for § 523(a)(6) willfulness. As discussed in further detail below, conscious disregard is akin to recklessness.

**a.  A punitive damages award under California law can be based on acts in conscious disregard.**

As defined by the California Supreme Court, a person acts with a conscious disregard of another's rights or safety when he is aware of the probable dangerous consequences of his conduct and he willfully and deliberately fails to avoid those consequences.  Taylor v. Super. Ct., 24 Cal. 3d 890, 895-96 (1979); see also Jud. Council of Cal. Civ. Jury Instruction (CACI) 3940, 3941; Cal. Civ. Jury Instructions (BAJI) 14.71, 14.72.1.

The conscious disregard requirement found in CC § 3294 appears to track the Taylor decision.  In Taylor, the California Supreme Court examined whether the act of driving while intoxicated constituted malice for the purposes of a CC § 3294 punitive damages award.  Previously, some California courts held that reckless conduct did not establish malice as required for a punitive damages award.  See G.D. Searle & Co. v. Super. Ct., 49 Cal. App. 3d 22 (1975); see also Ebaugh v. Rabkin, 22 Cal. App.

14

3d 891, 896 (1972); Gombos v. Ashe, 158 Cal. App. 2d 517 (1958). Contra Nolin v. Nat'l Convenience Stores, Inc., 95 Cal. App. 3d 279, 285-88 (1979) (gross recklessness supported punitive damages award under CC § 3294). In an earlier case, the California Supreme Court, however, used the term "reckless misconduct" in dicta. See Donnelly v. S. Pac. Co., 18 Cal. 2d 863, 869-70 (1941).

The Taylor court held that "a conscious disregard of the safety of others [could] constitute malice within the meaning of [CC § 3294]." 24 Cal. 3d at 895. It also stated that to the extent Gombos v. Ashe was inconsistent with its holding, that case was disapproved. Id. at 900. Gombos previously held that drunk driving, while reckless, wrongful, and illegal, did not constitute malice within the meaning of CC § 3294. 158 Cal. App. 2d at 527. The Taylor court never expressly excluded recklessness as a basis for an award of punitive damages; it thus kept the door open to punitive damages based on a state of mind other than actual intent to injure.

Within a year of the Taylor decision, CC § 3294 was amended to require conscious disregard with respect to Despicable Malice and oppression. In so amending the statute, the California legislature included the two types of malice that exist currently: Intentional Malice and Despicable Malice. Clearly, it did not intend to include two identical forms of malice in the statutory definition. Thus, conscious disregard begins to take shape as a state of mind less malicious than an intent to injure.

///

15

### i. Conscious disregard is the equivalent of reckless conduct.

In the continuum of states of mind supporting a judgment based on tort, recklessness rests between negligence, requiring no intent, and intentional misconduct, requiring both a deliberate act and the desire to cause the consequences of the act. In <u>Donnelly v. S. Pac. Co.</u>, 18 Cal. 2d 863 (1941), the California Supreme Court considered whether existing law precluded a personal injury action based on negligence. It examined the contours of negligence and intentional torts and identified the existence of a third, intermediary category of tort law: "[a] tort having some of the characteristics of both negligence and willfulness occur[ed] when a person with **no intent to cause harm** intentionally perform[ed] an act so unreasonable and dangerous that he kn[ew], or should [have] know[n], it [was] highly probable that harm [would] result." <u>Id.</u> at 869 (emphasis added). Noting the various terms employed by the courts to describe this category of tort, it adopted with approval the term "wanton and reckless misconduct." <u>Id.</u>

This type of tort, the California Supreme Court explained, "involve[d] no intention, as [did] willful misconduct, to do harm, and i[t] differ[ed] from negligence in that it . . . involve[d] an intention to perform an act that the actor [knew], or should [have] know[n], [would] very probably cause harm." <u>Id.</u> Importantly, it recognized that "wanton and reckless misconduct" was more closely akin to willful misconduct than to negligence and, "[t]hus, it justifie[d] an award of punitive damages." <u>Id.</u> at 869-70.

16

The Donnelly court's analysis on this point is dicta, but it is also consistent with the Restatement of Torts discussion of reckless conduct.[9] The Restatement explains that one type of recklessness involves the situation where a person knows, or has reason to know (based on an objective person standard),[10] of facts creating a high degree of risk of physical harm to another, and deliberately proceeds to act, or **fails to act**, in **conscious disregard** of, or indifference to, that risk. Restatement (Second) of Torts § 500 cmt. a (1965) (emphasis added).[11] The person must know (or have reason to know of) the facts creating an unreasonable risk. Id.

The critical difference between intentional and reckless misconduct is the necessary state of mind; for conduct to be reckless, the person must intend the reckless act but need not intend to cause the resulting harm. Id., cmt. f. To establish recklessness, it is sufficient that the person realizes (or should realize) the "strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless." Id. But, a strong probability is not equivalent to

[9] We refer to the Restatement (Second) of Torts, in deference to the Supreme Court's discussion of the Restatement Second in Geiger and the Ninth Circuit's decisions in In re Jercich and In re Su. The Restatement (Third) of Torts: Liability for Phys. & Emot. Harm §§ 1 (Intent) (2010) and 2 (Recklessness) (2010) do not contain substantive differences that change our analysis.

[10] See Restatement (Second) of Torts § 12(1) (1965).

[11] The Restatement Second also points out a second type of reckless conduct: where the person knows (or has reason to know) of the facts but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so. Restatement (Second) of Torts § 500 cmt. a (1965).

17

substantial certainty. See id. ("[A] strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results."); id. § 8A cmt. b. Thus, "[a]s the probability that [injurious] consequences will follow decreases, and becomes less than substantial certainty, the [person's] conduct loses the character of intent, and becomes mere recklessness." Id. § 8A cmt. b.

Comparing the explanations of reckless conduct provided by the Donnelly court and the Restatement of Torts with the definition of conscious disregard, it becomes clear that conscious disregard proceeds from reckless conduct. The common factor between conscious disregard and reckless conduct is the accompanying state of mind; both require solely an intent to act and the focus lies there, rather than on an intent to cause the consequences of the act as required by Geiger. Degrees of recklessness may exist; but, again, whether recklessness is heightened or gross, it is insufficient for a determination of § 523(a)(6) willfulness.

In defining conscious disregard, the California Supreme Court in Taylor employed a description consistent with reckless conduct. As stated, acting with a conscious disregard within the meaning of CC § 3294 requires: (1) being aware of the probable dangerous consequences of one's own conduct; and (2) willfully and deliberately failing to avoid those consequences. Taylor, 24 Cal. 3d at 895-96.

First, to be aware of probable dangerous consequences, a person must first know or have reason to know of the facts

18

giving rise to a high degree of risk of harm to another. Knowledge of such facts is an essential element of recklessness. See Restatement (Second) of Torts § 500 cmt. a.

Second, whether consequences are "dangerous" relates to the character of a person's unreasonable conduct and the necessarily high degree of risk that serious harm will result from that conduct. See id., cmts. a, c.

Third, the probability factor of dangerous consequences also relates to reckless conduct. See id., cmt. a. Even a strong probability that consequences may result, however, is not equivalent to substantial certainty for the purposes of intent. See id., cmt. f; id. § 8A cmt. b. In this context, probable means more likely than not, while substantial certainty requires near certainty.

Fourth, the terms "willfully" and "deliberately" mean only that the person failed, by design, to avoid the consequences of his wrongful act. His intent is focused on the act of being unsuccessful in preventing potential bad consequences, rather than on the actual consequences of his act. See id. § 500 cmt. b ("Conduct cannot be in reckless disregard of the safety of others unless the act or omission is itself intended[.]").

The Supreme Court's decision in Bullock, although involving a different exception to discharge and federal common law rather than California state law, also strengthens the connection between conscious disregard and recklessness. There, the Supreme Court held that the term "defalcation," within the meaning of § 523(a)(4), included a state of mind involving gross recklessness with respect to improper fiduciary behavior. 133

19

S. Ct. at 1757. In doing so, it concluded that "[w]here actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary **'consciously disregards'** (or is willfully blind to) 'a substantial and **unjustifiable risk'** that his conduct will turn out to violate a fiduciary duty." Id. at 1759 (quoting Model Penal Code § 2.02(2)(c) (1985)) (emphasis added).

In sum, conscious disregard within the meaning of CC § 3294 is consistent with reckless conduct as discussed by California cases, the Restatement of Torts, and Bullock.

> **ii. California statutory authority and case law otherwise support that conscious disregard proceeds from reckless conduct.**

A statutory analogue lends significant support to the determination that conscious disregard arises from reckless conduct. California law provides for enhanced remedies in cases of elder abuse. See Cal. Welf. & Inst. Code § 15657. In order to claim these enhanced statutory remedies, a defendant must be found guilty of **recklessness**, oppression, fraud, or malice in the commission of abuse. See id. For the purposes of an elder abuse act claim, recklessness is defined as "a 'deliberate disregard' of the 'high degree of probability' that an injury will occur." Delaney v. Baker, 20 Cal. 4th 23, 31 (1999) (citing Cal. Civ. Jury Instructions (BAJI) 12.77, defining "recklessness" for intentional infliction of emotional distress; Restatement (Second) of Torts § 500)). Thus, recklessness "rises to the level of a conscious choice of a course of action . . . with knowledge of the serious danger to others involved in

20

it." Id. at 31-32 (citing Restatement (Second) of Torts § 500 cmt. g).

The descriptions of recklessness for the purpose of an elder abuse claim and conscious disregard within the meaning of CC § 3294 are substantively similar. Indeed, the California Supreme Court has held that a plaintiff alleging an elder abuse claim must allege conduct "essentially equivalent" to conduct necessary to support a CC § 3294 punitive damages award. See Covenant Care, Inc. v. Super. Ct., 32 Cal. 4th 771, 789 (2004). It, thus, implicitly recognized that an award of CC § 3294 punitive damages can be based on reckless conduct.

Moreover, various California courts have recognized the availability of CC § 3294 punitive damages for **nonintentional torts** when the offensive conduct is a conscious disregard of the rights or safety of others. See Peterson v. Super. Ct., 31 Cal. 3d 147, 158 (1982) ("Nonintentional torts may [] form the basis for punitive damages when the conduct constitutes conscious disregard of the rights or safety of others."); Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 1004 (1993) ("[P]unitive damages sometimes may be assessed in unintentional tort actions under [CC §] 3294."). Nonintentional torts, including those predicated on reckless conduct, require only an intent to act. See, e.g., Peterson, 31 Cal. 3d at 158-59 (Punitive damages are available to punish "[n]onintentional conduct . . . when a party intentionally **performs an act** from which he knows, or should know, it is highly probable that harm will result.") (emphasis added).

///

21

### iii. That "willful" is an additional requirement for Despicable Malice does not change the outcome of the analysis.

As stated, Despicable Malice is defined as despicable conduct done **willfully** and in conscious disregard of the rights or safety of another; oppression, notably, requires only a conscious disregard. Cal. Civ. Code § 3294(c)(1)-(2). The additional "willful" requirement in Despicable Malice, however, does not change the outcome of the analysis.

In the context of CC § 3294, the term "willful" refers only to the deliberate conduct committed by a person in a despicable manner. The statute, thus, employs the dictionary definition of "willful." See Geiger, 523 U.S. at 61 n.3 (noting that Black's Law Dictionary defined "willful" as "voluntary" or "intentional"). There is no indication that "willful" refers to a subjective intent to injure or a subjective belief that injury is substantially certain to result. And, this interpretation makes practical sense; to read the statute otherwise would render the inclusion of Intentional Malice in CC § 3294 superfluous.

### b. Determining that conscious disregard is insufficient to satisfy the § 523(a)(6) willfulness requirement is consistent with existing precedent.

Construing conscious disregard as a form of reckless conduct is consistent with Geiger and its progeny, including the Ninth Circuit's decisions in In re Jercich and In re Su. As the Supreme Court recognized in Geiger, expanding § 523(a)(6) to

22

include reckless conduct "would obviate the need for § 523(a)(9), which specifically exempts 'debts for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance.'" Geiger, 523 U.S. at 62 (quoting 11 U.S.C. § 523(a)(9)).

Yet, the availability of punitive damages for injuries caused while driving intoxicated was exactly the issue before the California Supreme Court in Taylor. It was this issue that caused the California Supreme Court to determine that conscious disregard could constitute malice. Not long after, the California legislature codified the inclusion of conscious disregard into CC § 3294.

We cannot reconcile the rationale supplied by the Supreme Court in Geiger in regards to § 523(a)(9) with the factual circumstances giving rise to the conscious disregard standard in Taylor. Thus, consistent with Geiger, we must reject the attempt to give issue preclusive effect to findings based on conscious disregard in the context of § 523(a)(6) willfulness. As recognized in Geiger, a determination to the contrary would render superfluous § 523(a)(9) in nondischargeability proceedings.

> **c. Despicable conduct, as also required for Despicable Malice and oppression, is based on an objective person standard.**

In addition to conscious disregard, both Despicable Malice and oppression require conduct that is despicable. Cal. Civ. Code § 3294(c)(1)-(2). Conduct is despicable when it is so

23

vile, base, contemptible, miserable, wretched, or loathsome that ordinary decent people would look down upon and despise it. Coll. Hosp. Inc., 8 Cal. 4th at 725 (describing despicable as circumstances that are "base," "vile," or "contemptible."); Jud. Council of Cal. Civ. Jury Instruction (CACI) 3940, 3941; Cal. Civ. Jury Instructions (BAJI) 14.71, 14.72.1.

Whether conduct is despicable is measured by an objective person standard. See In re Derebery, 324 B.R. at 356. But, an objective, reasonable person standard is not allowed in the § 523(a)(6) willfulness analysis. See In re Su, 290 F.3d at 1145 ("By its very terms, the objective standard disregards the particular debtor's state of mind and considers whether an objective, reasonable person would have known that the actions in question were substantially certain to injure the creditor."). Thus, a punitive damages award based on Despicable Malice or oppression does not establish the subjective intent required for § 523(a)(6) willfulness.

### d. The disjunctive findings in the punitive damages award included Despicable Malice and oppression.

Here, the CC § 3294 findings in the punitive damages award were stated in the disjunctive: that Yuri and Natalia each acted with malice **or** oppression **or** fraud. On this record, we cannot ascertain the exact basis for the jury's findings. Because the punitive damages award may have been based only on a finding of Despicable Malice or oppression, issue preclusion was unavailable on the issue of § 523(a)(6) willfulness.

To be clear, our holding does not eviscerate a bankruptcy court's ability or opportunity to apply issue preclusion to a

24

state court jury's findings pursuant to CC § 3294. To the extent the findings are **clearly** and **solely** based on a finding of Intentional Malice, fraud, or both, such findings are sufficient to meet the willfulness requirement of § 523(a)(6). And, of course, a state court judgment based on an intentional tort may independently satisfy the § 523(a)(6) willfulness requirement.

But, to the extent that CC § 3294 findings are stated in the disjunctive or based on Despicable Malice or oppression or both, those findings prevent the use of issue preclusion as to § 523(a)(6) willfulness. Even then, however, those particular findings are not without value to a creditor seeking nondischargeability under § 523(a)(6). The creditor is still entitled to seek issue preclusion on other issues based on findings of Despicable Malice or oppression, including the maliciousness requirement of § 523(a)(6). Under those circumstances, the bankruptcy court need only try the singular issue of the debtor's intent for the purposes of § 523(a)(6) willfulness; that is, whether the debtor subjectively intended to cause injury or was substantially certain that injury would follow. It need not retry the entire state court case a second time.

**4.    The breach of fiduciary duty determination under California law was an insufficient basis for issue preclusion on the issue of § 523(a)(6) willfulness.**

In California, the elements for a breach of fiduciary duty are the existence of a fiduciary relationship, breach of that fiduciary duty, and damages. <u>Oasis W. Realty, LLC v. Goldman</u>, 51 Cal. 4th 811, 820 (2011). There is no particular scienter

25

requirement, let alone a requirement of a subjective intent to injure.  See Correia-Sasser v. Rogone (In re Correia-Sasser), 2014 WL 4090837, at *8 (9th Cir. BAP Aug. 19, 2014).  As a result, without more, a judgment for breach of fiduciary duty under California law cannot support a willfulness determination under § 523(a)(6).

**B.  The bankruptcy court erred in granting summary judgment to Precision on its § 523(a)(4) claim against Yuri based on the issue preclusive effect of the State Court Judgment.**

Section 523(a)(4) excepts from discharge debts for fraud or defalcation while acting in a fiduciary capacity.  Whether a debtor is a fiduciary for the purposes of § 523(a)(4) is a question of federal law.  Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996).  The definition is construed narrowly, requiring that the fiduciary relationship arise from an express or technical trust that was imposed prior to the wrongdoing that caused the debt.  Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986) ("The broad, general definition of fiduciary—a relationship involving confidence, trust and good faith—is inapplicable in the dischargeability context."); see also Otto v. Niles (In re Niles), 106 F.3d 1456, 1459 (9th Cir. 1997).

**1.  Express or technical trust**

State law determines whether the requisite trust relationship exists.  See In re Lewis, 97 F.3d at 1185; Mele v. Mele (In re Mele), 501 B.R. 357, 365 (9th Cir. BAP 2013).  The Debtors argue that here an express trust did not exist because the elements for a trust were not satisfied under California

26

law. They maintain that, at best, the 2005 operating agreement required that Yuri hold the properties in trust for Precision; but, because Yuri was the sole member of Precision from 2005 to 2008, the duty to hold the properties in trust was effectively a duty to himself.

In response, Precision argues that the Debtors ignore Yuri's status as its manager, which independently established fiduciary duties owed to the company. In any event, it contends that, based on the 2008 amendment, the Bronfmans' membership interests in Precision were deemed issued as of the date of the 2005 operating agreement. And, it argues that pursuant to former California Corporations Code § 17153, a manager of a limited liability company is subject to the same fiduciary duties as a partner in a partnership; thus, by extension and pursuant to Ragsdale, a manager is a trustee of the limited liability company.

Something that neither party addresses is that Precision is a Nevada limited liability company. Pursuant to the 2005 operating agreement, Precision was organized under the laws of Nevada. Former California Corporations Code § 17450(a),[12] in effect at the time of the underlying events and the state court action, established that: "[t]he laws of the state . . . under which a foreign limited liability company is organized shall govern its organization and **internal affairs** and the **liability and authority of its managers and members**." Emphasis added.

The 2008 amendment to the Precision operating agreement

---

[12] The new version, California Corporations Code § 17708.01, provides for the same.

27

states that: "[n]otwithstanding a conflict of [l]aws, the operating agreement may be enforced in the Courts of the State of California and or in the Courts of the State of New York, including the Federal District Courts of California and/or New York." Enforcing the operating agreement in a California or New York court, however, does not alter the law under which the agreement arose or by which it is governed. Thus, it appears that, for the purposes of § 523(a)(4), we look to Nevada law to determine whether an express or technical trust existed such that Yuri was a fiduciary to Precision.

          **a.   An express trust did not exist.**

Under Nevada law, an express trust requires that: (1) "[t]he settlor properly manifest[] an intention to create a trust; and [(2)] [t]here is trust property . . . ." Nev. Rev. Stat. § 163.003. There are various methods to create a trust, including a declaration by the owner of property that he or she holds the property as trustee or a transfer of property by the owner during his or her lifetime to another person as trustee. Id. § 163.002. Nevada also permits the creation of a business trust. See Nev. Rev. Stat. §§ 88A.010-88A.930 (2003). To create a business trust, a party must file with the Nevada secretary of state a certificate of trust. See id. § 88A.210 (2005).

Here, there is no indication that an express trust existed. Neither the 2005 operating agreement nor the 2008 amendment satisfied the requirements for an express trust. Nor is there anything else in the record that suggests the creation of an express trust during the time that Yuri was manager of

28

Precision. Similarly, nothing in the record before us evidences the creation of a business trust. Thus, the next issue is whether a technical trust existed under Nevada law.

> **b. On this record, we cannot determine whether a technical trust existed.**

Nevada law does not define a technical trust. In the absence of a definition under state law, we construe a technical trust as one imposed by law. See In re Mele, 501 B.R. at 365; see also Teamsters Local 533 v. Schultz (In re Schultz), 46 B.R. 880, 885 (Bankr. D. Nev. 1985) ("[A technical] trust . . . may arise by operation of a state statute which imposes trust-like obligations on those entering into certain kinds of contracts.").

Our review of the Nevada Revised Statutes ("NRS") reflects that a Nevada limited liability company does not necessarily involve a trust relationship between a manager or member and the limited liability company. One exception — NRS § 86.391 — provides that "[a] member **holds as trustee** for the company specific property stated in the articles of organization or operating agreement as contributed by the member, but which was not so contributed." Nev. Rev. Stat. § 86.391(2) (emphasis added). And, NRS § 86.311 establishes that "[r]eal and personal property owned or purchased by a company must be held and owned, and conveyance made, in the name of the company."

Unlike California, Nevada does not have a statute equating the fiduciary duties of a manager in a limited liability company context to those of a partner in a partnership. Therefore, duties under partnership law are irrelevant. Instead, Nevada

29

law establishes that, in addition to a limited liability company's articles of organization, the operating agreement, if any,[13] is central to defining the contours of the fiduciary relationship. And, parties to an operating agreement have significant latitude in expanding or limiting fiduciary duties. See Nev. Rev. Stat. § 86.286 (2013).

Here, the 2005 operating agreement does not expressly establish the existence or the non-existence of fiduciary duties owed to Precision by its manager. Nor does it provide that Yuri contributed any property to the company, the only manner in which Nevada law expressly creates a fiduciary duty to a limited liability company. See Nev. Rev. Stat. § 86.391(2). The operating agreement, however, provides that "[n]o real or other property of the LLC shall be deemed to be owned by any Member individually, but shall be owned by and title shall be vested solely in the LLC." While that provision and NRS § 86.311 created duties owed to Precision, we cannot determine whether either appropriately relates to a technical trust, rather than to a constructive or resulting trust. The latter trusts, of course, are insufficient to support § 523(a)(4) nondischargeability. See Ragsdale, 780 F.2d at 796.

Other documents and evidence may also exist that fill the lacuna here; for example, Precision's articles of organization, required to create a limited liability company under Nevada law. See Nev. Rev. Stat. § 86.151(1)(a) (2003). Such document may or

---

[13] In Nevada, "[a] limited-liability company may, but is not required to, adopt an operating agreement." Nev. Rev. Stat. § 86.286.

30

may not establish that a trust relationship existed between Yuri and Precision. These determinations, however, must be made by the bankruptcy court, rather than the Panel, in the first instance.

On this record, we cannot conclude that, as a matter of law, a technical trust existed under Nevada law. The bankruptcy court, thus, abused its discretion in giving preclusive effect to the State Court Judgment on the issue of whether there existed a fiduciary relationship in relation to a technical trust for the purposes of § 523(a)(4) nondischargeability.[14]

**C.    Judgment amount excepted from discharge**

Finally, the Debtors argue that the bankruptcy court was required to conduct a separate inquiry into the measure of damages attributable to the specific tortious conduct at issue in the state court action. They contend that there were multiple breaches of fiduciary duty alleged and to the extent any of the breaches do not constitute a breach under federal law, any damages flowing from such breach are dischargeable. They also contend that only a damages judgment for fraud is subject to issue preclusion without further analysis by the bankruptcy court.

Based on our conclusions on both the § 523(a)(6) and (a)(4) issues, we need not address this argument on appeal.

CONCLUSION

Given the unavailability of issue preclusion, the bankruptcy court erred in granting summary judgment in favor of

---

[14]    Given our conclusion, we do not address the other issues related to the § 523(a)(4) nondischargeability judgment.

31

Precision based on the preclusive effects of the State Court Judgment. Therefore, we VACATE the summary judgment and REMAND to the bankruptcy court for further proceedings consistent with this opinion.