**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-15-1106-TaKuKi |
| ) | |
| HOLY HILL COMMUNITY CHURCH, ) | Bk. No.   2:14-bk-21070-WB |
| ) | |
| Debtor. ) | Adv. No.   2:14-ap-01744-WB |
| _____ ) | |
| ) | |
| DANA PARK, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| RICHARD J. LASKI, Chapter 11 ) | |
| Trustee; 1111 SUNSET, LLC; ) | |
| DOWNTOWN CAPITAL, LLC, ) | |
| ) | |
| Appellees.[**] ) | |
| _____ ) | |

Argued and Submitted on November 19, 2015
at Pasadena, California

Filed – January 5, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Julia Wagner Brand, Bankruptcy Judge, Presiding

Appearances:     Marvin Levy argued for appellant Dana Park;
Richard D. Buckley, Jr. of Arent Fox LLP argued
for appellee Richard J. Laski, Chapter 11
Trustee.

_____

[*]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

[**]   Although named by Appellant in the notice of appeal, 1111 Sunset, LLC was not a party to the adversary proceeding. And Downtown Capital, LLC did not appear in the appeal.

Before: TAYLOR, KURTZ, and KIRSCHER, Bankruptcy Judges.

## INTRODUCTION

Dana Park appeals from an order dismissing, without leave to amend, a complaint against chapter 11[1] debtor Holy Hill Community Church. DISMISSAL of the appeal, based on mootness, is warranted. To the extent any portion of the appeal retains vitality, a merits review yields no basis for reversal and we would AFFIRM.

## FACTS

The Debtor is a Presbyterian church that formerly owned valuable real property located in Los Angeles, California (the "Property").

## Prepetition Events

In 2010, a schism developed between the Debtor's membership and leadership. Eventually, The Western California Presbytery, a governing organization for the Debtor, became involved. The dispute escalated, and the Presbytery took action; on March 24, 2011, it terminated Dong Sub Bang as pastor and president of the board of elders, and it replaced the three members of the board of elders. The result of the Presbytery's actions was a competition between the factions for possession and control of the church and the Property.

In April 2011, the Presbytery sought a secular solution to the discord and commenced an action against Bang and the three

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

removed elders (collectively, the "Bang Faction") in California state court (the "Presbytery action"). The Bang Faction responded by recording two deeds of trust purporting to create liens in their favor and against the Property. And in August 2011, it executed and recorded a quitclaim deed ("Beverly Deed") purporting to transfer the Property from the Debtor to Beverly Real Estate Investments LLC ("Beverly LLC"). Beverly LLC later recorded a quitclaim deed transferring the Property to Golden Fish, LLC. Park now entered the fray; she controls both Beverly LLC and Golden Fish, LLC.

After its discovery of this activity, the Debtor took action independent of the Presbytery and commenced a quiet title action against Park, Beverly LLC, and the Bang Faction in state court. Subsequently it filed an application for an order restoring title in the Property to the Debtor, based on an order entered in the related Presbytery action.

In the Presbytery action, the court had issued an order finding the Beverly Deed invalid because the Bang Faction executed it after their removal from the Debtor's governance ("Presbytery action order"). Based on that finding, the court then granted a request for injunctive relief preventing the Bang Faction, Park, and Beverly LLC from interfering with the Debtor's possession, management, and control of the Property. It also ordered restoration of the Property to the Presbytery. Notably, the Presbytery action order contained express reference to Park and Beverly LLC, although neither was a named party in the litigation.

Consistent with the Presbytery action order, the court in

3

the Debtor's quiet title action granted the Debtor's application, over Park's objection, and ordered that title in the Property be restored to the Debtor ("order restoring title"). Its decision was made in accordance with the Presbytery action order, "finding invalid the attempt to transfer the Property . . . ." Concurrently, the state court clerk of court, on behalf of Beverly LLC, executed a quitclaim deed that transferred the Property from Beverly LLC back to the Debtor; the deed was properly recorded. The Debtor also moved for and obtained a state court order expunging the deeds of trust recorded by the Bang Faction ("order expunging liens").

Park and Beverly LLC soon found themselves without counsel in the quiet title action. As a result, the state court struck their answers and entered defaults (but not default judgments) against them; they did not appear again in the litigation. Meanwhile, having obtained restoration of title to the Property, the Debtor successfully petitioned for voluntary case dismissal of its action.

## Bankruptcy Filing and Post-Petition Events

The Debtor filed its chapter 11 petition in June 2014. A chapter 11 trustee was appointed soon after.

In September 2014 and in spite of knowledge of the bankruptcy, Park commenced an action against the Debtor and members of the Bang Faction (but not Bang), in state court; she did not seek stay relief prior to filing the action. The complaint alleged broadly that Park held an interest in the Property based on "a quitclaim deed." It sought to quiet title against the Debtor's claims to the Property as of the chapter 11

4

petition date and requested a declaration that the defendants did not have any right, title, estate, lien, or interest in the Property. The complaint also alleged that the defendants wrongfully threatened to sell the Property; thus, Park sought injunctive relief preventing interference with her use of the Property.

The Trustee removed Park's action to the bankruptcy court and moved to dismiss the complaint under Civil Rule 12(b)(6), without leave to amend, based on the issue preclusive effect of the state court orders in the Debtor's quiet title action. Thus, he discounted the impact of the Beverly Deed because the state court previously deemed it invalid. Similarly, he also dismissed the impact of an unrecorded deed in lieu of foreclosure relied upon by Park; the Bang Faction signed it during a time when the state court previously determined they lacked authority to take action on behalf of the Debtor.

Park opposed. Beyond a broad assertion that the complaint contained sufficient factual allegations supporting a plausible claim for relief, she also asserted, vaguely, that other claims for relief possibly existed, including fraud, unjust enrichment, and "other causes of action." Park admitted, however, that she needed to propound discovery on the Debtor and "other involved parties" to flesh out these claims.

At the bankruptcy court's request, the parties submitted supplemental briefs on the issue of issue preclusion; the bankruptcy court was particularly concerned with whether the "final judgment" element was satisfied, given that the Debtor had dismissed its quiet title action prior to trial. Park

5

responded with an assertion aslant of this request; according to Park, the Beverly Deed was executed on account of Beverly LLC's purchase of the promissory note evidencing an obligation owed for the Property in July 2011. She also argued more generally that the state court orders were not final for issue preclusion purposes and that, in any event, she was not a party to or in privity with the party subject to the Presbytery action order.

At a continued hearing, the bankruptcy court stated that after a careful review of the Trustee's motion, Park's opposition, and the supplemental briefs, it would dismiss the complaint without leave to amend. It found all of the elements for issue preclusion satisfied, as it deemed the order restoring title a final order. It also noted that quitclaim deed executed by the state court clerk of court had transferred the Property back to the Debtor, and that no appeal followed. The bankruptcy court concluded with the observation that Park was free to file a proof of claim in the bankruptcy case if she had claims beyond the complaint, but that leave to amend the complaint was not warranted.

The bankruptcy court entered an order dismissing Park's claims with prejudice. Park appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158, as discussed further below.

## ISSUES

Whether this appeal is moot; if not, whether the bankruptcy court erred in dismissing the complaint or abused its discretion

6

in dismissing without leave to amend.

## STANDARDS OF REVIEW

We review the following issues de novo: our jurisdiction, including questions of mootness, Ellis v. Yu (In re Ellis), 523 B.R. 673, 677 (9th Cir. BAP 2014); dismissal of an adversary proceeding under Civil Rule 12(b)(6), Johnson v. Fed. Home Loan Mortg. Corp., 793 F.3d 1005, 1007 (9th Cir. 2015); and the availability of issue preclusion. Plyam v. Precision Dev., LLC (In re Plyam), 530 B.R. 456, 461 (9th Cir. BAP 2015).

If issue preclusion was available, we next review the bankruptcy court's application for an abuse of discretion. Id. A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. Id. We also review for an abuse of discretion a bankruptcy court's decision to dismiss a complaint without leave to amend. Tracht Gut, LLC v. Cty. of Los Angeles Treasurer & Tax Collector (In re Tracht Gut, LLC), 503 B.R. 804, 810 (9th Cir. BAP 2014).

Finally, we may affirm on any basis supported by the record. Heers v. Parsons (In re Heers), 529 B.R. 734, 740 (9th Cir. BAP 2015).

## DISCUSSION

Following the filing of the notice of appeal, the bankruptcy court entered an order approving a § 363 sale (the "§ 363 order") of the Property to a third party purchaser, "free and clear of all liens, liabilities, claims and encumbrances of any kind and nature . . . ." The § 363 order contained several

7

critical findings: the bankruptcy estate was "the sole and lawful owner of the Property"; the sale vested the purchaser with all of the estate's "right, title, and interest . . . to the Property"; and the purchaser was a good faith buyer within the meaning of § 363(m). Park received notice of the motion to sell; she did not file any opposition. No appeal was taken from the § 363 order, and it is now final.

In response to a BAP Clerk order on potential mootness, Park contends that the sale did not moot the appeal, as the Panel could provide that the sale was subject to Park's claims in her quiet title action. And she contends that the buyer was not a bona fide purchaser because it knew or should have known of Park's quiet title action. In the alternative, she asserts that the Panel could order the "Trustee [to] hold in reserve, from future distributions to be made to unsecured creditors, funds sufficient to pay [Park's] pro rate [sic] share of her claim as required by section 502(j) of the Bankruptcy Code, especially since the Chapter 11 Plan has not yet been confirmed by the bankruptcy court." In closing, Park argues that hotly contested issues remain as to her asserted rights and claims to the Property.

Based on the record before us, we conclude that the appeal is moot as to Park's claims for injunctive relief and requesting a quiet title order as to the Property.

"A case is moot if the issues presented are no longer live and there fails to be a 'case or controversy' under Article III of the Constitution." Pilate v. Burrell (In re Burrell), 415 F.3d 994, 998 (9th Cir. 2005). Determining constitutional

8

mootness turns on whether "the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in [its] favor." Id. An appeal may be equitably moot if an appellant fails to seek a stay pending appeal. See JPMCC 2007-C1 Grasslawn Lodging, LLC v. Transwest Resort Properties, Inc. (In re Transwest Resort Props., Inc.), 801 F.3d 1161, 1167 (9th Cir. 2015).

Here, the complaint sought to quiet title in Park's favor and for injunctive relief barring the Debtor's "interference" with Park's use of the Property. Curiously, title to and possession of the Property was restored to the Debtor nearly two and a half years before Park commenced her action. In any event, the § 363 sale extinguished Park's requests as to title and possession. As stated, the § 363 order is now final. Park's failure to appeal, let alone seek a stay pending appeal of the § 363 order, only strengthens a mootness determination. See Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.), 771 F.3d 1211, 1216 (9th Cir. 2014).

To the extent Park believes that she possesses a damages claim or is entitled to the sale proceeds based on an extinguished ownership interest in the Property, on this record, we disagree. Park's interest in the Property was premised on the Beverly Deed. But, the state court in the Presbytery action determined that the deed was invalid. As the bankruptcy court determined, Park was precluded from relitigating the validity of the Beverly Deed issue so as to establish an ownership interest in the Property. Therefore, it did not err in dismissing the complaint with prejudice. But, even if issue preclusion was not

9

available, any error was harmless as the § 363 order supplies an ultimate bar to Park's claims to the Property.

A motion to dismiss under Civil Rule 12(b)(6) (incorporated into adversary proceedings by Rule 7012(b)) challenges the sufficiency of the allegations set forth in a complaint and "may be based on either a lack of [: (1)] a cognizable legal theory or . . . [(2)] sufficient facts alleged under a cognizable legal theory." Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citation omitted). The court's review is limited to the allegations of material facts set forth in the complaint, which must be read in the light most favorable to the non-moving party, and together with all reasonable inferences therefrom, must be taken as true. Pareto v. Fed. Dep't Ins. Corp., 139 F.3d 696, 699 (9th Cir. 1998).

Consistent with Civil Rule 8(a)(2), the factual allegations in the complaint must state a claim for relief that is facially plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Thus, based on the Iqbal/Twombly rubric, the bankruptcy court must first identify bare assertions that "do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation," and discount them from an assumption of truth. See Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). Then, if there remain well-pleaded factual allegations, the bankruptcy court should assume their truth and determine whether the allegations "and reasonable inferences from that content" give rise to a plausible claim for relief.

*Id.* "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." 556 U.S. at 679.

In California, issue preclusion applies: (1) after final adjudication; (2) of an identical issue; (3) actually litigated in the former proceeding; (4) necessarily decided in the former proceeding; and (5) asserted against a party in the former proceeding or in privity with that party. See DKN Holdings LLC v. Faerber, 61 Cal. 4th 813, 825 (2015).

Park challenges only the bankruptcy court's determinations in relation to two of the elements of issue preclusion: that the state court orders were final and that Park was a party to or in privity with the parties to those orders. To be clear, there are two sets of state court orders: the Presbytery action order (consisting of a preliminary injunction order) and the Debtor's quiet title action orders (consisting of the order restoring title and the order expunging liens). In issuing its orders, the state court in the Debtor's quiet title action explicitly relied on the Presbytery action order.

These orders, admittedly, provided for injunctive relief, so as to preserve the status quo during the pendency of the Debtor's quiet title action (and the Presbytery action). In California, "a decision on an application for a preliminary injunction does not amount to a decision on the ultimate rights in controversy." Bomberger v. McKelvey, 35 Cal. 2d 607, 612 (1950). Nonetheless, an exception is carved out when "it appears that the court intended a final adjudication of the issue involved . . . ." Id.

That was the result here. As stated, Park's interest in the Property is premised on the Beverly Deed. But, the state court in the Presbytery action found that the Beverly Deed was invalid because the Bang Faction had been removed from their positions in the church at the time that the Beverly Deed was executed and recorded. In particular:

> The evidence show[ed] that the attempt by Bang and his affiliates to quitclaim the deed to the Property was **invalid** as these individuals had already been removed from their positions by the Presbytery, and thus, had **no authority to act on behalf of the Church**. See August 29, 2011 Order (finding that Bang was removed by the Presbytery as Senior Pastor on March 29, 2011, that the Presbytery appointed a new Board of Elders headed by the new Senior Pastor Reverend Abraham Cho, and that "the Cho faction was entitled to operate and manage Church property on an interim basis.").

Adv. Dkt. No. 11 at 124 (emphasis added).

On appeal in the Presbytery action, the California court of appeal in effect reaffirmed this finding. See The W. Cal. Presbytery v. Holy Hill Cmty. Church, 2012 WL 5360909, at *2, 4 (Cal. Ct. App. Nov. 1, 2012) (the record supported the trial court's determination that Bang was removed from his pastorship in March 2011); see also Jun Ki Kim v. True Church Members of Holy Hill Cmty. Church, 236 Cal. App. 4th 1435, 1442 (2015) ("[W]ithout authority, Rev. Bang entered into financial arrangements with . . . other entities which had the effect of encumbering the [Property] . . . ."). That Bang and his faction were no longer in control of the church and, thus, lacked any authority to effectuate a transfer of the Property in August 2011 is beyond dispute; it is now a conclusive fact. Nothing Park asserts can change this fact. And, even if Park could surmount this hurdle, she ignores the consequences of the

12

quitclaim deed later issued by the state court clerk of court, transferring the Property back to the Debtor.

Park's arguments as to the same party or privity element similarly fail. There is no question that Park was a party to the Debtor's quiet title action or that the state court's orders in that litigation applied to Park and Beverly LLC. Again, the state court in the Debtor's quiet title action relied on the finding in the Presbytery action order, but it acted independently. In any event, the state court in the Presbytery action identified Park and Beverly LLC in its order. That Park and Beverly LLC were not parties to the Presbytery action is, thus, irrelevant.

Based on the foregoing, issue preclusion was available and the bankruptcy court did not abuse its discretion in giving preclusive effect to the state court orders. But, even if issue preclusion was not available, any error was harmless based on the § 363 order.

Again, the § 363 order contained critical findings, such as the estate's sole ownership of the Property. The order, inclusive of the findings, is now final and non-appealable. The result serves to bar any assertion by Park of an interest in the Property. Instead, Park's continued efforts to challenge ownership constitute an impermissible collateral attack of the § 363 order.

In sum, Park could not show that she had a valid interest in the Property when she filed her complaint. The § 363 order now further bars any such assertion. Consequently, there was no error in the bankruptcy court's dismissal of the complaint; nor

13

did it abuse its discretion in denying leave to amend as any amendment would be futile.

## CONCLUSION

We conclude that DISMISSAL of the appeal as moot is appropriate. In the alternative, based on a merits review, we would AFFIRM the bankruptcy court.