FILED

NOV 9 2021

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>TODD E. MACALUSO,<br>　　　　　　Debtor. | BAP No. SC-19-1065-SFL<br><br>Bk. No. 16-04214-LT7 |
| TODD E. MACALUSO,<br>　　　　　　Appellant,<br>v.<br>RJC FUNDING, LLC,<br>　　　　　　Appellee. | Adv. No. 16-90157-LT<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Laura S. Taylor, Bankruptcy Judge, Presiding

Before: SPRAKER, FARIS, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

In a federal diversity action, creditor RJC Funding, LLC, obtained a partial default judgment against debtor Todd E. Macaluso on several causes of action, including its fraud claim. The district court awarded RJC

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

damages of $2,385,000.70. Afterwards, Macaluso commenced his chapter 7[1]

bankruptcy, and RJC initiated an adversary proceeding to except the

judgment debt from discharge. The bankruptcy court ultimately granted

RJC summary judgment on its claim under § 523(a)(2)(A) based on the

issue preclusive effect of the district court's default judgment. The

bankruptcy court also granted summary judgment in a smaller amount

under § 523(a)(13) based on a judgment for criminal restitution resulting

from Macaluso's guilty plea for wire fraud. RJC then dismissed its other

nondischargeability claims.

Because none of Macaluso's arguments on appeal justify reversal, we

AFFIRM.

## FACTS[2]

RJC and its affiliates (collectively, "RJC") provided litigation funding

to law firms and their litigation clients including Macaluso and his wholly-

owned law firm Macaluso & Associates, APC. For several years, the

litigation funding transactions between RJC and Macaluso were performed

in accordance with the parties' agreements. Under the agreements,

Macaluso "sold" to RJC his interest in the anticipated proceeds from the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

underlying litigation, and he was required to pay specified amounts in accordance with a payment schedule in the parties' agreements, subject to a condition precedent that the underlying litigation yielded the anticipated proceeds.

For every agreement between RJC and Macaluso, there was a companion agreement between RJC and Macaluso's litigation client. Under the companion agreement, the client would sell RJC a portion of the anticipated proceeds from the underlying litigation and also would agree to non-recourse "pay-off amounts" from the litigation proceeds in accordance with a payment schedule included in the companion agreement.

In 2012 and 2013, the parties entered into a series of litigation funding transactions that later resulted in years of litigation (collectively, the "Failed Transactions"). RJC claims that Macaluso defaulted on the Failed Transactions. In contrast, Macaluso claims that the Failed Transactions did not yield any litigation proceeds for RJC because his litigation clients did not prevail. Under such circumstances, Macaluso contended that he was not obliged to pay anything.

In August 2014, the parties entered into a Promissory Note Settlement Agreement ("Settlement"). Though neither party admitted fault or breach, Macaluso agreed to pay over time a fraction of what RJC claimed it was owed, plus 15% interest. Macaluso also offered to assign additional anticipated litigation proceeds from various litigation matters. There were

3

several different default provisions in the Settlement. Ultimately, however, if Macaluso defaulted and failed to cure, the claimed "full purchase price" of $1,906,762, plus 15% interest, would be due. Macaluso defaulted and never paid the amount agreed to under the Settlement.

In April 2015, the United States filed a criminal information against Macaluso for one count of wire fraud under 18 U.S.C. § 1343. In the information, the United States alleged that Macaluso:

> knowingly devised and intended to devise, with the intent to defraud, a material scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and by intentional concealment and omission of material facts.

The information further alleged that in furtherance of his fraud scheme, Macaluso caused to be transmitted a "funding agreement" in interstate commerce.

Macaluso pled guilty to the one count of wire fraud. At the sentencing hearing, the U.S. attorney described the nature of the fraud. He stated that RJC was the victim and that it "invested in Mr. Macaluso's ongoing cases with the belief that those funds would be used for litigation expenses, which they were not." As for the amount of money RJC lost, the U.S. attorney stated that at least $150,000 of the amount that RJC funded "had not been repaid."

The U.S. attorney further explained that RJC was presented with the companion agreements supposedly obtained by Macaluso from his

4

litigation clients acknowledging their desire to obtain litigation funding and to use a portion of the anticipated litigation proceeds as a payment source for the specified payoff amounts. According to the U.S. attorney, the signatures of the litigation clients and the attendant notary stamps on the companion agreements were forged. Macaluso conceded that the signatures and the notary stamps on the subsidiary agreements were not done properly. But Macaluso denied that any litigation funds were misused.

In November 2015, the district court entered its criminal judgment, sentenced Macaluso to five months imprisonment, and imposed a $100,000 fine. The court also ordered Macaluso to pay RJC $150,000 in restitution.

That same month, RJC sued Macaluso and others in federal court for fraud, breach of contract, and other causes of action. RJC alleged that Macaluso and his co-defendants engaged in an intentional scheme to defraud RJC by entering into litigation funding transactions under false pretenses. According to RJC, Macaluso requested litigation funding for two cases, *Marsch v. DLA Piper US, LLC* and *Giordano v. Amex Assurance Co.* RJC asserted that Macaluso led RJC to believe that the plaintiffs in each of these cases desired to sell their anticipated litigation proceeds for litigation funding purposes and that they agreed to enter into the companion agreements necessary to consummate litigation funding transactions. As RJC explained, Macaluso presented RJC with fully executed companion agreements that purported to include the notarized signatures of the

plaintiffs in the underlying cases. RJC maintained that, in reality, Macaluso caused the client signatures and notary stamps to be forged and that he never intended to use the funding for litigation expenses; rather, he always intended to and did use the funding for his own personal use or for his co-defendants' benefit.

With respect to both the *Marsch* and *Giordano* transactions, RJC contended that it reasonably relied on the information and documentation Macaluso provided. RJC asserted that it suffered damages of not less than $2,240,445.34, on which interest, costs, and attorney's fees were continuing to accrue.

Macaluso was duly served with the complaint in the district court civil action. He never filed an answer, though he did file a request to extend the time to respond to the original request for entry of default. Indeed, he later admitted that he affirmatively chose not to defend the district court civil action on the advice of counsel and based on his own legal research. Ultimately, the district court entered partial default judgment against Macaluso for $2,385,000.70.[3] The default judgment was specifically granted on both RJC's breach of contract and fraud causes of action — as well as on certain other causes of action.

Macaluso commenced his chapter 7 case in July 2016. RJC filed its nondischargeability complaint a few months later. Among other claims for

---

[3] Although the default judgment only disposed of some of RJC's claims, RJC dismissed its remaining claims in July 2017, as reflected in the district court's docket.

relief, RJC asserted a claim under § 523(a)(2)(A) that Macaluso fraudulently induced it to enter into the Failed Transactions and the Settlement, which resulted in RJC suffering damages of at least $2,380,000. For purposes of this claim for relief, RJC relied on allegations that largely mirrored the content of its first amended complaint filed in the district court civil action. It attached and incorporated the district court's default judgment into its nondischargeability complaint.

RJC also stated a claim for relief under § 523(a)(13) seeking to except from discharge the $150,000 restitution award provided for in the district court's criminal judgment.

Macaluso appeared through counsel and filed an answer to the nondischargeability complaint. Notably, Macaluso admitted the truth of paragraph 41 of the nondischargeability complaint, which provided: "[a]s a direct and proximate result of the foregoing [fraudulent conduct], Plaintiff has suffered damages in an amount not presently ascertained but believed to be in excess of $2,380,000 which should be exempted from discharge in the Debtor Macaluso's bankruptcy."

RJC filed its summary judgment motion based largely on the issue preclusive effect of the district court default judgment. But it also relied on the preclusive effect of the federal criminal judgment, especially for its § 523(a)(13) claim for relief. It further relied on Macaluso's admission of paragraph 41 of the nondischargeability complaint.

Macaluso complained that RJC gave his counsel insufficient notice of the summary judgment hearing. Nonetheless, Macaluso opposed the summary judgment motion. He principally argued that the Settlement subsumed and superseded the Failed Transactions, and the Settlement was insufficient by itself to support the district court's fraud finding.

At the hearing on the summary judgment motion, the bankruptcy court rejected Macaluso's arguments and granted partial summary judgment in favor RJC on its claims for relief under § 523(a)(2)(A) and (13). The court made it clear it was denying summary judgment with respect to the remainder of RJC's nondischargeability claims and required RJC to advise the court whether it wanted to continue to prosecute those other claims or to dismiss them without prejudice.

Macaluso filed a notice of appeal on March 18, 2019 and an amended notice of appeal on March 25, 2019. On May 16, 2019, he filed a motion for reconsideration. Meanwhile, the bankruptcy court entered on April 16, 2019 an order granting partial summary judgment in favor of RJC. That order contemplated not only the voluntary dismissal of RJC's lingering nondischargeability claims but also the submission and entry of a "final separate judgment" to fully and finally dispose of the adversary proceeding. The bankruptcy court entered that judgment on June 19, 2019.

On July 1, 2019, the bankruptcy court entered an order denying Macaluso's reconsideration motion. Among other things, the court noted that Macaluso had admitted in his declaration in support of his

8

reconsideration motion that he affirmatively chose not to defend the district court civil action based on the advice of his counsel and his own legal research. The court further observed that most of the points Macaluso sought to advance in his reconsideration motion amounted to defenses and arguments that he might have asserted in the district court civil action but were not properly before the bankruptcy court as part of the nondischargeability action.

Macaluso did not file a new notice of appeal or an amended notice of appeal from the denial of his reconsideration motion, as contemplated in Rule 8002(b)(3).

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court err when it granted summary judgment in favor of RJC on its claim under § 523(a)(2)(A)?

2. Did the bankruptcy court err when it granted summary judgment in favor of RJC on its claim under § 523(a)(13)?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's grant of summary judgment. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015). We also review de novo the bankruptcy court's determination that issue preclusion is available. *Lopez v. Emergency Serv.*

9

*Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 103 (9th Cir. BAP 2007). When we review a matter de novo, "we consider [the] matter anew, as if no decision had been rendered previously." *Kashikar v. Turnstile Cap. Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 164 (9th Cir. BAP 2017).

If we determine that issue preclusion is available, we then review the bankruptcy court's decision to apply it for an abuse of discretion. *In re Lopez*, 367 B.R. at 103. A bankruptcy court abuses its discretion if it applies the wrong legal standard, or its findings of fact are illogical, implausible or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

**A.    Summary judgment and issue preclusion legal standards.**

A bankruptcy court may grant summary judgment when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also In re Plyam*, 530 B.R. at 462 (citing Civil Rule 56(a), which is made applicable in adversary proceedings by Rule 7056).

When a federal district court, sitting in diversity, disposes of a cause of action under state law, the issue preclusive effect of the district court's judgment also is determined by state law. *See Taco Bell Corp. v. TBWA Chiat/Day Inc.*, 552 F.3d 1137, 1144-45 (9th Cir. 2009) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)). RJC's causes of action set

10

forth in its district court complaint were founded on California law. Under California issue preclusion law, the proponent must establish the following threshold elements:

> (1) the issue sought to be precluded from relitigation is identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding.

*In re Plyam*, 530 B.R. at 462 (citing *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341 (1990)).

Before applying issue preclusion, the bankruptcy court additionally needs to assess "whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy." *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 824-25 (9th Cir. BAP 2006), *aff'd*, 506 F.3d 956 (9th Cir. 2007) (citing *Lucido*, 51 Cal. 3d at 341-43).

The party asserting issue preclusion has the burden of proof to establish each of the threshold requirements. *See Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001). To satisfy this burden, the moving party "must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir. 1996). Any reasonable doubt regarding what the prior court decided is resolved against the moving party. *Id.*

11

California generally applies issue preclusion to default judgments. As the California Supreme Court has explained: "The fact that the judgment was secured by default does not warrant the application of a special rule. A default judgment is an estoppel as to all issues necessarily litigated therein and determined thereby exactly like any other judgment." *Williams v. Williams (In re Williams' Estate)*, 36 Cal. 2d 289, 293 (1950) (cleaned up), *quoted with approval in In re Harmon*, 250 F.3d at 1246.

*Harmon* interpreted *Williams'* rules for applying issue preclusion to default judgments through the lens of modern (post-*Lucido*) California issue preclusion law. *In re Harmon*, 250 F.3d at 1246-47 & nn. 5, 6. Based on its interpretation of *Williams*, *Harmon* explained that when a litigant invokes the issue preclusive effect of a prior default judgment, he or she must establish — in addition to *Lucido's* threshold elements — that the defendant in the prior action duly received service of the summons and the complaint or had actual knowledge of the existence of the prior action. *Id.* at 1247 (citing *In re Williams' Estate*, 36 Cal. 2d at 297).

According to *Harmon*, the plaintiff must also show that the court in the prior action made express findings on the issues to be precluded or that such findings, even if not expressly made, were essential to the prior court's default judgment — in the sense that the default judgment could not have been properly rendered without implicitly making such findings. *Id.* at 1247-48. As *Harmon* further explained, if the issues were essential to the default judgment, they were both actually litigated and necessarily

12

decided for issue preclusion purposes. *Id.* at 1248-49 (citing *Baldwin v.
Kilpatrick (In re Baldwin)*, 249 F.3d 912, 919 (9th Cir. 2001)).

**B.     Macaluso's arguments on appeal.**

Macaluso exclusively attacks the portion of the bankruptcy court's
judgment based on § 523(a)(2)(A). That section generally excepts from
discharge debts for money, property, or services procured by fraud. *Oney v.
Weinberg (In re Weinberg)*, 410 B.R. 19, 35 (9th Cir. BAP 2009). The elements
for a fraud claim under § 523(a)(2)(A) mirror the elements for a fraud cause
of action under California law, which require: "(1) a misrepresentation
(false representation, concealment, or nondisclosure); (2) knowledge of
falsity; (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance;
and (5) resulting damage." *Zuckerman v. Crigler (In re Zuckerman)*, 613 B.R.
707, 714 (9th Cir. BAP 2020), *appeal docketed*, Case No. 20-60031 (9th Cir. July
13, 2020).

We will address in turn each of Macaluso's arguments challenging
the portion of the bankruptcy court's judgment based on § 523(a)(2)(A).

**1.     Macaluso's argument that no actionable fraud occurred is an
impermissible collateral attack on the default judgment.**

Macaluso initially contends that the bankruptcy court erred in
granting summary judgment on RJC's § 523(a)(2)(A) claim because no
actionable fraud occurred. He reasons that RJC could not have suffered
compensable fraud damages inasmuch as his clients lost the underlying
litigation. Given that the underlying litigation was lost, Macaluso

13

maintains that he owed nothing to RJC on account of the Failed Transactions. As he further maintains, he only agreed in the Settlement to make further payments on account of the Failed Transactions because he hoped to obtain additional litigation funding from RJC in the future.

In addition, Macaluso posits that because the district court already had awarded RJC $150,000 in restitution in its criminal judgment, any amount of damages awarded in the district court civil action would have been duplicative and a windfall because the restitution award made RJC whole.

It is too late for Macaluso to argue that he did not commit any actionable fraud. As the bankruptcy court correctly observed, Macaluso could have asserted this and similar arguments if he had elected to defend the district court civil action. But he chose not to do so, and the district court entered judgment against Macaluso for fraud.

Put differently, Macaluso's argument that he did not commit actionable fraud amounts to an impermissible collateral attack on the district court's default judgment. Therefore, we will not further consider it. "Our prior decisions make clear that appellants cannot successfully challenge an order on appeal by attacking a prior final order that they did not timely appeal." *Jue v. Liu (In re Liu)*, 611 B.R. 864, 881 (9th Cir. BAP 2020); *see also Heritage Pac. Fin., LLC v. Machuca (In re Machuca)*, 483 B.R. 726, 735-36 (9th Cir. BAP 2012) ("[T]he bankruptcy court's order granting

14

summary judgment was final. HPF cannot collaterally attack that judgment through the § 523(d) proceeding.").

### 2. The bankruptcy court did not err in applying issue preclusion to the default judgment.

Macaluso next argues that the bankruptcy court should not have applied issue preclusion to the district court default judgment. Macaluso reasons that he did not have a full and fair opportunity to defend against the district court civil action because he was incarcerated at the time and was not able to work effectively with his counsel or review necessary documents to mount a meaningful defense within the time permitted. He further asserts that the district court should not have denied his request for additional time to respond to the request for entry of default.

Macaluso's assertions regarding his opportunity to defend the district court action are at odds with his admission that he affirmatively chose not to defend the action. Furthermore, though courts consider the opportunity to litigate when deciding the issue preclusive effect of a default judgment, that requirement generally is satisfied if the defendant received service of the summons and the complaint **or** had actual knowledge of the existence of the prior action. *In re Harmon*, 250 F.3d at 1247 (citing *In re Williams' Estate*, 36 Cal. 2d at 297). Here, there is no legitimate dispute that Macaluso was duly served with the summons and complaint in the district court civil action **and** that he was aware of the action. Indeed, his counsel made an

15

appearance in the action when he requested an extension of time to respond to RJC's initial request for entry of default.

Under California law, the opportunity to litigate can be considered more fully as part of the public policy inquiry the court must undertake if it determines that the threshold elements for application of issue preclusion have been met. *See id.* at 1247 & n.6. Here, the bankruptcy court applied the correct law. It expressly considered Macaluso's points about his opportunity to litigate in the process of considering whether public policy supported the application of issue preclusion to the district court default judgment. The bankruptcy court found that in spite of his incarceration, Macaluso had ample opportunity both before and after entry of the default judgment to challenge the district court's entry of a default judgment.

On this record, the bankruptcy court's findings regarding Macaluso's opportunity to defend the district court civil action were logical, plausible, and supported by the record. Consequently, we perceive no ground for reversal based on Macaluso's opportunity to defend against the district court civil action.

Macaluso also challenges the bankruptcy court's determination that his fraudulent conduct was actually litigated in the district court civil action. By implication, he also challenges the necessarily decided issue preclusion element. *See id.* at 1248 ("As a conceptual matter, if an issue was necessarily decided in a prior proceeding, it was actually litigated."). Relying exclusively on federal issue preclusion law, Macaluso asserts that a

default judgment generally should not be considered to satisfy the issue preclusion elements of actually litigated and necessarily decided.

However, the bankruptcy court correctly applied **California** issue preclusion law, which provides that a default judgment satisfies the actually litigated and necessarily decided elements when it includes express findings or when such findings are implicit in the prior judgment because they were essential elements of the causes of action on which the prior court specifically granted relief. *See id.* at 1248-49; *In re Baldwin*, 249 F.3d at 919. Here, the default judgment established that all the elements for RJC's fraud claim were met. Because the fraud elements obviously were essential to rendering judgment on the fraud claim, the fraud elements were actually litigated and necessarily decided for issue preclusion purposes.

Thus, we reject as meritless Macaluso's arguments that the bankruptcy court erred when it applied issue preclusion to the district court's default judgment.

### 3. The bankruptcy court did not err in its treatment of the federal criminal judgment.

The bankruptcy court granted summary judgment for RJC on its § 523(a)(13) claim based on the criminal judgment entered on Macaluso's guilty plea. Section 523(a)(13) excepts from discharge any debt "for any payment of an order of restitution issued under title 18, United States Code." Nothing other than a criminal judgment for violation of title 18 that

provides for restitution is necessary to except a debt from discharge under § 523(a)(13). *See Sanders v. Progressive Cas. Ins. Co. (In re Sanders)*, BAP No. AZ-06-1382-PaBMo, 2007 WL 7540961, at *1, *4 (9th Cir. Mar. 30, 2007). Macaluso did not challenge the bankruptcy court's decision that the criminal restitution judgment was nondischargeable under § 523(a)(13) and has waived any argument for reversing that portion of the bankruptcy court's judgment. *See Christian Legal Soc'y v. Wu*, 626 F.3d 483, 487-88 (9th Cir. 2010).

Macaluso does contend that the bankruptcy court erred in giving the criminal judgment issue preclusive effect as to RJC's nondischargeability claim under § 523(a)(2)(A). However, as explained above, the bankruptcy court's summary judgment on RJC's § 523(a)(2)(A) claim was adequately supported by the issue preclusive effect of the default judgment, so there is no need for us to address the extent to which the criminal judgment also supported summary judgment on RJC's § 523(a)(2)(A) claim.

### 4. The bankruptcy court's alleged violation of Macaluso's due process rights was not reversible error.

Macaluso argues that the bankruptcy court erred when it failed to continue the summary judgment hearing. He contends that he did not have enough time to meaningfully respond to the summary judgment motion and that the bankruptcy court violated his due process rights by denying his counsel's request for a continuance of the summary judgment proceedings. He states that his counsel was given only 20 days advance

notice of RJC's summary judgment motion rather than 28 days as required by Local Rule 9013-6(a)(1).

This is a misstatement of the record. Whereas Macaluso says that the summary judgment motion was served on his counsel on January 16, 2019, the record reflects that the summary judgment motion and the moving papers filed contemporaneously with the motion were served on January 3, 2019. This was more than 30 days before the February 6, 2019 summary judgment hearing. The notice of the February 6, 2019 summary judgment hearing was the only document that RJC served on January 16, 2019. But Macaluso's counsel was actually apprised of the February 6, 2019 hearing date much earlier. At the time of the status conference held on November 2, 2018, which counsel for both sides attended, the court set February 6, 2019 for hearing any dispositive motions filed in the action. On the same day as the November 2, 2018 status conference, the bankruptcy court entered a minute order reflecting the February 6, 2019 hearing date as well as other dates and deadlines set by the court.

The bankruptcy court effectively denied Macaluso's continuance request during the summary judgment hearing. In doing so, the court observed that there was little or nothing additional that Macaluso could meaningfully say that could potentially change its analysis and resolution of the summary judgment motion given the issue preclusive effect of the default judgment and nature of the criminal restitution. In short, Macaluso has failed to establish how he was harmed by the denial of the continuance.

The contents of Macaluso's subsequent motion for reconsideration bear out the bankruptcy court's observation. The motion for reconsideration largely mirrors the arguments that Macaluso has advanced on appeal. As we have explained in this decision, most of Macaluso's arguments are meritless and none justify reversal. When as here the record demonstrates that appellant was not prejudiced in any discernable way by an alleged denial of due process, the appellant's due process argument will not support reversal. *See Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 776-77 (9th Cir. 2008), *partially overruled on other grounds by Nichols v. Marana Stockyard & Livestock Mkt., Inc. (In re Nichols)*, 10 F.4th 956, 962 (9th Cir. 2021).

### 5. Macaluso was not entitled to a sua sponte grant of summary judgment in his favor.

Next, Macaluso argues that the bankruptcy court should have sua sponte granted summary judgment in his favor. Civil Rule 56(f), made applicable in adversary proceedings by Rule 7056, sets forth procedures that enable a court to exercise its discretion to grant summary judgment in favor of a nonmoving party. But nothing in Macaluso's appeal papers demonstrates that the bankruptcy court was obliged to sua sponte exercise such discretion. To the contrary, the general rule is that an appellant cannot successfully argue on appeal that a court abused its discretion by failing to grant discretionary relief when the appellant never asked the court for that relief. *See, e.g., Consorzio Del Prosciutto Di Parma v. Domain Name Clearing*

20

*Co., LLC*, 346 F.3d 1193, 1195 (9th Cir. 2003); *Rohauer v. Friedman*, 306 F.2d 933, 937 (9th Cir. 1962).

In any event, Macaluso's argument that he should have been granted summary judgment is largely a recapitulation of the same points Macaluso made in his initial argument that his conduct did not amount to actionable fraud. Thus, for the same reasons we rejected Macaluso's initial argument, we also reject his final argument attacking the bankruptcy court's summary judgment ruling.

**6.     The denial of Macaluso's reconsideration motion is beyond the scope of this appeal.**

There is one final issue that we must address. To the extent Macaluso sought to challenge on appeal the denial of his motion for reconsideration, he should have filed a new notice of appeal or an amended notice of appeal as contemplated in Rule 8002(b)(3). Because he failed to do so, the denial of his reconsideration motion is beyond the scope of this appeal. *Olomi v. Tukhi (In re Tukhi)*, 568 B.R. 107, 112 (9th Cir. BAP 2017); *see also Linton v. Colpo Talpa, LLC (In re Linton)*, ___ B.R. ___, BAP No. NC-20-1175-KTB, 2021 WL 4592517, at *7 (9th Cir. BAP Oct. 6, 2021) ("Linton's notice of appeal challenged only the denial of the Civil Rule 21 motion to join parties. As Linton did not appeal the § 303(i) judgment, no other ruling by the bankruptcy court arising from the § 303(i) relevant proceeding is before us."), *appeal docketed*, Case No. 21-60053 (9th Cir. Oct. 19, 2021).

Even if we were to conclude that we somehow have jurisdiction to review the denial of the reconsideration motion, we still would affirm. Macaluso has forfeited any issue concerning the propriety of that denial by not specifically and distinctly advancing any argument for reversal of the denial. *See Christian Legal Soc'y*, 626 F.3d at 487-88.

## CONCLUSION

For the reasons set forth above, the bankruptcy court's grant of summary judgment in favor of RJC on its claims for relief under § 523(a)(2)(A) and (13) is AFFIRMED.